UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan Carlos ARGUEDAS, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Jesus Alberto CARSON, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 20-cv-2044-AGS-BGS<br><br>**ORDER GRANTING IN PART DEFENDANTS' SUMMARY-JUDGMENT MOTION (ECF 85)** |

In this breach-of-contract and fraud case, the defense moves for summary judgment.

## BACKGROUND[1]

In 2015, plaintiffs met with defendant Alberto Carson in person to discuss doing business together on medical-evacuation flights. (ECF 88-2, at 2–3.) The plan was for plaintiffs to provide medevac services to patients, while Carson would bill and collect payments from those patients and their insurance companies. (*Id.*) Everyone agrees that Carson was to remit plaintiffs' share of the bills collected. (*Id.* at 8–9.)

Over the next few years, plaintiffs flew hundreds of medevac flights. (ECF 85-1, at 6–7; ECF 88-1, at 94–95.) The parties dispute how involved Carson's wife—defendant Marcella Meraux-Carson—was in this operation. But two of the Carsons' businesses—defendants Aeromedical Consulting Group, LLC, and Global Medevac Rescue, Inc.—handled much of the billing and collections for these medical trips. (ECF 88-1, at 20.)

In 2016 and 2017, plaintiffs claim that they flew many flights for which they were never paid, amounting to over $1.7 million. (ECF 28, at 7.) They eventually sued Carson, Meraux-Carson, Aeromedical, and GMR for breach of contract, fraud, and violations of the Uniform Voidable Transactions Act. (*See* ECF 19 & 28.) The defense now moves for partial summary judgment.

---

[1] The Court need not resolve the objections to some of plaintiffs' submitted facts (*see* ECF 90, at 4–5; ECF 90-2, at 2), as they do not alter the summary-judgment analysis.

1

# DISCUSSION

## A.  Legal Standard

Summary judgment is proper when the record, taken in the light most favorable to the nonmoving party, demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

When the "nonmoving party will bear the burden of proof at trial," the party urging summary judgment shoulders the initial burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). This may be accomplished by "'showing'—that is, pointing out through argument—the absence of evidence . . . ." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the nonmoving party to "go beyond the pleadings and identify facts which show a genuine issue for trial." *Id.* at 531. The summary-judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## B.  Discussion

### 1.  Breach of Contract

**(a)** *98 Unpaid Flights*

The parties agree that plaintiffs were not entitled to any payment for a medevac flight until Carson collected some revenue for it. (ECF 88-2, at 8–9.) Defendants argue there is no evidence of collected payments for 98 of the 174 flights at issue, and thus move for partial summary judgment on the breach-of-contract claim for those 98 trips. (ECF 85-1, at 20.) Rather than provide contradictory evidence, plaintiffs cry foul about discovery. They complain that defendants "blatantly withheld" collections evidence on these flights, despite "repeated requests." (ECF 88, at 16.)

2

For summary-judgment purposes, defendants met their initial burden by pointing out the lack of evidence on these flights. The burden then shifts to plaintiffs to pinpoint "specific facts" in the record "showing that there is a genuine issue for trial." *Fairbank*, 212 F.3d at 532. Discovery-misconduct accusations do not conjure such evidence, nor carry that burden. If discoverable evidence was improperly withheld, plaintiffs should have moved to compel its production. Discovery is now closed, and the time for wrangling over disclosure violations is long past. The summary-judgment stage is the "'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Sorayama v. Robert Bane, Ltd., Inc.*, No. CV 05-1431 FMC (MCX), 2006 WL 8432085, at *4 (C.D. Cal. Jan. 27, 2006). In other words, plaintiffs must come forward with admissible evidence that raises a triable issue about whether Carson collected revenue on these disputed flights. They have not.

Even if the Court were to recast plaintiffs' argument as a Rule 56(d) request to deny the motion or receive additional discovery, summary judgment would still be proper. For Rule 56(d) relief, a plaintiff must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Although plaintiffs offer a declaration (*see* ECF 88-1), it does not speak to any Rule 56(d) prerequisite. And "[f]ailure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (cleaned up).

Thus, summary judgment on the breach-of-contract claim is granted for the defense regarding the 98 unpaid flights. Plaintiffs may still pursue this cause of action as to the remaining 76 flights, for which some revenue was collected. (*See* ECF 85-1, at 20.)

**(b)** ***Aeromedical, GMR, and Meraux-Carson***

Defendants move for summary judgment on the breach-of-contract claim as to Aeromedical, GMR, and Meraux-Carson on the ground that they were not parties to the alleged oral contract. (ECF 85-1, at 17.) The defense notes that Meraux-Carson did not attend the 2015 meeting at which the oral contract was purportedly formed. (ECF 88-2,

at 3.) Even according to plaintiffs' testimony, Meraux-Carson had "nothing" to do with the agreement, nor did she later have any "business dealings." (ECF 88-2, at 4; ECF 85-4, at 14.) Finally, the defense points out that during the crucial meeting, Carson never mentioned Aeromedical, GMR, or Meraux-Carson, nor did he indicate they would be parties to the contract. (ECF 88-2, at 4; ECF 88-3, at 2.) This recitation more than meets the defense's initial burden on summary judgment.

Plaintiffs don't contest those facts. They instead maintain that there is a triable breach-of-contract case against these defendants because: (1) the "course of conduct certainly established GMR and Aeromedical as parties to the business agreement" (ECF 88, at 15); (2) plaintiff Juan Carlos Arguedas testified that he "understood" that Aeromedical and GMR "would be performing the billings and collections" (*id*.); and (3) Aeromedical, GMR, and Meraux-Carson are all liable as "alter egos" of each other (*id*. at 11–13, 15).

(1) *Course of Conduct*

Regarding the "course of conduct" argument, plaintiffs' legal theory is unclear, and they cite no caselaw to shed light on their rationale. They may be arguing that this Court should include Aeromedical and GMR as parties to the alleged oral contract, based on the course of conduct. Or perhaps plaintiffs contend that there is a separate implied contract between plaintiffs and these two businesses that is evidenced by the parties' conduct. After all, assent to an implied contract "may be manifested by words or other conduct," including "course of dealing or usage of trade or course of performance." *Binder v. Aetna Life Ins. Co.*, 89 Cal. Rptr. 2d 540, 551 (Ct. App. 1999) (quoting Restatement (Second) of Contracts § 4, cmt. a (Am. Law Inst. 1981), and citing Cal. Civ. Code §§ 1619, 1621).

At any rate, plaintiffs have not carried their burden of pointing to "specific facts" about the course of conduct that create "a genuine issue for trial." *See Fairbank*, 212 F.3d at 532. The only fact they offer in favor of this thesis is that, between "2015 and 2019, Defendants utilized both Aeromedical and GMR to bill and collect[] on medevac flights carried out by Plaintiffs." (ECF 88, at 11; *see also* ECF 88-1, at 20.) Even so, that doesn't

mean those businesses were in a contractual relationship with *plaintiffs*, nor that those companies were required to perform under the alleged contract between plaintiffs and Carson. In fact, plaintiffs admit that defendants didn't always use Aeromedical and GMR for billing and collections, as they "outsourced 92 flights to Skyborne Resources, Inc." (*See* ECF 88, at 7.)

### (2) *Juan Carlos Arguedas's Understanding*

Next, plaintiffs point to Juan Carlos Arguedas's somewhat equivocal testimony about the contracting parties. He initially omitted Carson's companies entirely when listing "the three groups to [the] oral contract," which he identified as "Alberto Carson," plaintiffs, and "the doctors who referred patients for medevac flights." (ECF 85-4, at 9–10.) Yet he later stated that, "as far as I understand," the oral contract "was with an individual, Alberto Carson, but that would include all of his companies." (ECF 85-4, at 12.) Still later, Arguedas rephrased that as: "[I]t was with him as an individual. But that does not exclude each and every one's companies." (*Id*. at 12–13; *see also id*. at 12 (noting that Carson's membership in the company they were forming "does not exclude his other companies").) Ultimately, Arguedas cautioned: "[R]emember that this happened seven years ago, so I don't have an exact recollection of what was said." (*Id*. at 13.)

Regardless of Arguedas's precise understanding, it is unclear how or why he came to that belief, or that anyone else shared it. His personal interpretation of the meeting does not rebut testimony that Carson only represented his "own interests, as an individual"; Carson "never spoke to [plaintiffs] about any [of his] companies"; and "GMR did not even exist until roughly two years after that in-person meeting." (*See* ECF 85-3, at 2–3.) Nor does it establish what specific roles Aeromedical or GMR were supposed to play in the agreement. Arguedas's vague memories at best raise a "metaphysical doubt" as to whether the defendant businesses were parties to an oral contract, but that falls well short of plaintiffs' burden. *See Matsushita*, 475 U.S. at 586.

(3) *Alter Ego*

The main thrust of plaintiffs' argument is the alter ego doctrine. Under that doctrine, when a party uses "the corporate form unjustly," a court may pierce the corporate veil and "hold the individual shareholders liable" for the corporation's misconduct. *Greenspan v. LADT, LLC*, 121 Cal. Rptr. 3d 118, 137 (Ct. App. 2010). "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 836 (Ct. App. 2000). In general, it will only be invoked when two conditions are met: "First, there must be such a unity of interest and ownership between the corporation [or LLC] and its equitable owner that the separate personalities of the corporation [or LLC] and the shareholder [or member] do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation [or LLC] alone." *Blizzard Energy, Inc. v. Schaefers*, 286 Cal. Rptr. 3d 658, 671 (Ct. App. 2021).

A "host of factors" must be considered to determine if the corporate form is being misused. *Greenspan v. LADT, LLC*, 121 Cal. Rptr. 3d 118, 138–39 (Ct. App. 2010) (listing 14 non-exhaustive factors). But courts typically require certain "critical facts," such as "inadequate capitalization, commingling of assets, [or] disregard of corporate formalities." *Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 443 (Ct. App. 1994). Plaintiffs' arguments about such "critical facts" (and even lesser ones) don't stand up to scrutiny. First, they assert that there "was 'commingling of funds and assets' as no one else had control of that money other than" the Carsons. (ECF 88, at 14.) But "control" doesn't prove commingling. The Carsons may exercise absolute authority over their personal and business assets, so long as they don't improperly mix them. *See Wells Fargo Bank, N.A. v. Weinberg*, 173 Cal. Rptr. 3d 113, 119 (Ct. App. 2014) (affirming alter ego finding when claimant failed, among other things, "to keep his personal and business expenses and funds separate"). A second ill-conceived accusation is that there "was 'disregard of corporate formalities,' as evidenced by the lack of documents made available to the defense accounting expert . . . ." (ECF 88, at 14.) Yet the defense's refusal to turn over documents

does not prove that those documents lack any formalities. Plaintiffs offer no positive evidence—nor any circumstantial proof—of deficient corporate protocols.

Third, plaintiffs claim that "the businesses were 'a mere shell or conduit for the affairs of' [the Carsons], as evidenced by their quick and obvious enrichment in 2017-2019." (ECF 88, at 14.) Even assuming the Carsons became richer, it does not follow that they used these businesses as shells to do so. According to plaintiffs, the Carsons were enriched by refusing to pay plaintiffs millions of dollars owed. But the Carsons didn't need a conduit business to stop paying their debts; they could just stop paying. Indeed, plaintiffs claim that defendants also owe them revenue collected by third-party Skyborne Resources, which no one suggests is a shell company.

Finally, plaintiffs contend that Aeromedical and GMR have "identical equitable ownership," "identical directors and officers," and the "same offices and employees." (ECF 88, at 14.) But these facts alone are not enough to trigger alter ego liability. *See, e.g.*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (rejecting alter ego when the only incriminating factors were "equitable ownership, use of the same offices and employees," and "identical officers and directors"); *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080, 1083–84 (C.D. Cal. 2009) (refusing "alter ego" status, although the two companies had the "same office location and telephone number," "similar shareholders and directors," and one person was "the president of both corporations").

In short, plaintiffs have not come close to establishing alter ego status for anyone. Defendants' summary-judgment motion on the breach-of-contract claim is granted in its entirety as to Meraux-Carson, Aeromedical, and GMR.

**2. Fraud**

Meraux-Carson moves for summary judgment on the claim of common-law fraud by intentional misrepresentation. She argues that she was not a party to the contract and never communicated with plaintiffs "regarding Plaintiffs' business dealings with Mr. Carson," nor about "the status of payment on claims." (ECF 85-1, at 15.) According

7

to the second amended complaint, Carson made all the alleged misrepresentations to plaintiffs "on behalf of and as an agent of all Defendants." (ECF 28, at 7.) But plaintiffs have not offered any evidence that Meraux-Carson authorized—or was even aware of—any such false statements. Nor do plaintiffs "oppose summary adjudication as to Ms. Meraux on this one specific issue." (ECF 88, at 14.) Thus, Meraux-Carson's unopposed summary-judgment motion on the fraud claim is granted as to her only.

### 3. UVTA Fraudulent Transfer

Finally, Meraux-Carson seeks summary judgment on the fraudulent-transfer claim, arguing that she wasn't a party to the contract and thus not a "debtor" under the Uniform Voidable Transactions Act. (*See* ECF 85-1, at 16); *see also* Cal. Civ. Code § 3439.04(a). But plaintiffs need not prove that she's a "debtor." Plaintiffs "may bring a claim" against a nondebtor defendant "if they can show that [defendant] conspired to violate the UVTA." *Sanger v. Ahn*, No. 18-CV-07204-JCS, 2019 WL 1229660, at *7 (N.D. Cal. Mar. 15, 2019) (relying in part on *Filip v. Bucurenciu*, 28 Cal. Rptr. 3d 884, 892 (Ct. App. 2005)); *see also Filip*, 28 Cal. Rptr. 3d at 889 (affirming nondebtor wife's liability under the UVTA's substantially similar predecessor statute when "she knew of the existence of Plaintiff's claim prior to the transfers," and the transfers "were in furtherance of her scheme" to prevent plaintiff from satisfying his claim).

Because Meraux-Carson's sole summary-judgment argument on the UVTA claim lacks merit, that request is denied.[2]

---

[2] The Court acknowledges that Meraux-Carson challenged the sufficiency of the UVTA violation when she previously moved to expunge the lis pendens on her properties. In granting that motion, this Court ruled that plaintiffs are unlikely "to prevail on their fraudulent-transfer claim." (ECF 100, at 5.) But she did not seek summary judgment on that basis. In any event, there are different standards for summary judgment and for removing a lis pendens. *Compare Anderson*, 477 U.S. at 248 (summary judgment: no "reasonable jury could return a verdict for the nonmoving party"), *with* Cal. Civ. Proc. Code § 405.32 (lis pendens expungement: "preponderance of the evidence" standard for the "probable validity of the real property claim").

# CONCLUSION

Summary judgment is **GRANTED** as to:

1. The breach-of-contract claim (first cause of action) against Meraux-Carson, Aeromedical, and GMR.

2. The fraud claim (second cause of action) against Meraux-Carson.

Summary judgment is **GRANTED IN PART** as to:

3. The breach-of-contract claim (first cause of action) against all defendants regarding the 98 unpaid flights, as discussed above. (Plaintiffs may still pursue this cause of action as to the remaining 76 flights, for which some revenue was collected.)

In all other respects, defendants' summary-judgment motion is **DENIED**.

Dated: January 22, 2024

_____
Andrew G. Schopler
United States District Judge